Sandra Joyce BARATTA, Appellee;

v.

POLK COUNTY HEALTH SERVICES, INC., Appellant.

Polk County Health Services, Inc., Appellant,

v.

Sandra Joyce Baratta, her unknown spouses, heirs, devisees, grantees, assigns, successors in interest and unknown claimants of the following described real estate situated in Polk County, Iowa: Lot 87 Wakonda Manor, Plat 5, included in and forming a part of Des Moines, Polk County, Iowa, Appellees.

No. 97–95.

Supreme Court of Iowa.

Jan. 21, 1999.

Mark V. Hanson and David L. Phipps of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

Clifford S. Swartz of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellee.

SNELL, Justice.

Defendant Polk County Health Services (PCHS) appeals from summary judgment granted to plaintiff Sandra Baratta in her action to foreclose a judgment lien. We conclude the district court should have granted the motion of PCHS for summary judgment on its counterclaim to quiet title and therefore erred in granting Sandra's motion for summary judgment. We therefore reverse and remand for entry of judgment in favor of PCHS.

I. Background Facts and Proceedings

A Nebraska court dissolved Sandra and Frank Baratta's marriage by a decree issued June 10, 1970. The divorce decree granted Sandra custody of the couple's daughter, and ordered Frank to pay $110 per month in child support. Frank failed to pay support and Sandra alleges he is $63,632.69 in arrears, including accrued interest.

Frank subsequently moved to Polk County and married Rose, his current wife. In 1989 they purchased a home in Polk County as joint tenants, which they claimed as their homestead. This property is the subject of

the current litigation. In 1992, in an attempt to collect the unpaid child support, Sandra registered the Nebraska divorce decree in the Polk County District Court clerk's office pursuant to Iowa Code section 626A.2 (1991) (providing for filing and status of foreign judgments). The record does not reveal anything further was done to collect the outstanding support at that time.

In December 1995, Frank and Rose Baratta sold their homestead property to PCHS. Although Sandra's judgment against Frank for the unpaid child support had been recorded in Polk County at the time it was filed in 1992, it was inadvertently omitted from the abstract and was not uncovered as a cloud on the title at the time of sale. On April 12, 1996, Sandra filed a foreclosure petition against PCHS in an attempt to enforce the judgment lien. Along with its answer, PCHS filed a counterclaim seeking to quiet title in the property and requesting attorney fees. Both parties filed motions for summary judgment. The district court granted Sandra's motion, concluding she had a valid lien against the property which could be enforced against PCHS. The court denied PCHS's motion. The court foreclosed the lien, rendered judgment in favor of Sandra for $63,632.69, and ordered special execution to issue for sale of the property. PCHS appeals.

## II. Issues on Appeal

PCHS contends the district court erred in granting the foreclosure. It argues that Sandra did not have a judgment against Rose and that Rose's homestead interest in the real estate prevented Sandra's judgment lien against Frank from attaching to the property. In the alternative, it maintains the district court should have denied Sandra's motion because genuine issues of material fact exist regarding which, if any, of the support payments are still valid judgments due to the passage of twenty-six years since entry of the decree, what interest Frank has in the real estate, what priority other recorded liens have on the real estate, and whether Sandra has exhausted all other property subject to execution.

## III. Scope and Standard of Review

Sandra Baratta filed a petition in equity for foreclosure of a judgment lien. As a counterclaim to Sandra's foreclosure action, PCHS brought an action to quiet title. Actions to quiet title also lie in equity. *See* Iowa Code § 649.6 (1995); *accord Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 886 (Iowa 1981). Our review of a foreclosure action and an action to quiet title would typically be de novo. *See* Iowa R.App. P. 4 (providing for de novo review of equity actions). Despite the nature of these causes of action, however, "we cannot find facts de novo in an appeal from summary judgment." *Moser*, 312 N.W.2d at 886. Therefore, we review the district court's grant of Sandra's motion for summary judgment and the denial of PCHS's motion for summary judgment for the correction of errors at law. *See* Iowa R.App. P. 4.

Summary judgment is appropriate only when the entire record including pleadings, discovery and affidavits on file shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c). A "genuine" issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Fees v. Mutual Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992). A fact is "material" only when its determination might affect the outcome of the suit. *Id.* In reviewing the grant or denial of a motion for summary judgment, we examine the evidence in a light most favorable to the nonmoving party. *Mewes v. State Farm Auto. Ins. Co.*, 530 N.W.2d 718, 721 (Iowa 1995).

The district court granted Sandra's motion for summary judgment on her petition for foreclosure. The court denied PCHS's motion for summary judgment on its quiet title action. The district court did not address the objections made by PCHS in its resistance to Sandra's motion for summary judgment, particularly whether the judgment against Frank was still valid after the passage of twenty-six years, whether Sandra had exhausted other property subject to execution, and the priority of other liens against the subject property.

## IV. Discussion

### A. Action to Quiet Title

We consider first the claim by PCHS that the district court erred in denying its motion for summary judgment on its action to quiet title pursuant to Iowa Code chapter 649 (1995). Section 649.1 provides:

An action to determine and quiet the title of real property may be brought by anyone, whether in or out of possession, having or claiming an interest therein, against any person claiming title thereto, though not in possession.

As part of its counterclaim, PCHS sought attorney fees under Iowa Code section 649.5, which states as follows:

If a party, twenty days or more before bringing suit to quiet a title to real estate, requests of the person holding an apparent adverse interest or right therein the execution of a quitclaim deed thereto, and also tenders to the person one dollar and twenty-five cents to cover the expense of the execution and delivery of the deed, and if the person refuses or neglects to comply, the filing of a disclaimer of interest or right shall not avoid the costs in an action afterwards brought, and the court may, in its discretion, if the plaintiff succeeds, assess, in addition to the ordinary costs of court, an attorney's fee for plaintiff's attorney, not exceeding twenty-five dollars if there is but a single tract not exceeding forty acres in extent, or a single lot in a city, involved . . . .

To determine whether PCHS's motion for summary judgment on its action to quiet title should have been granted, we must determine whether Sandra's judgment lien can be enforced against the property.

### B. Iowa Law on Judgment Liens and the Homestead Exemption

PCHS contends the judgment lien never attached to the property in question because Rose's homestead interest in the property prevented attachment. We begin by reviewing relevant statutes and our prior cases involving the issue of judgment liens attaching to homestead property.

Iowa Code section 624.23(1) addresses the attachment of judgment liens to the debtor's real property. It provides as follows:

Judgments in the appellate or district courts of this state, or in the circuit or district court of the United States within the state, are liens upon the real estate owned by the defendant at the time of such rendition, and also upon all the defendant may subsequently acquire, for the period of ten years from the date of the judgment.

The homestead exemption is found in Iowa Code section 561.16 and declares: "The homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." In one of our early cases, we construed the predecessors to sections 624.23(1) and 561.16 and concluded that the general terms of section 624.23(1) regarding judgment liens are limited by the exemption provided in section 561.16. *See Lamb v. Shays,* 14 Iowa 567, 570 (1863) ("Construing the two sections together, having been passed at the same time by the Legislature, we think that it could not have been designed that the lien should ever attach upon property that was declared exempt from judicial sale."); *see also Brown v. Vonnahme,* 343 N.W.2d 445, 449–50 (Iowa 1984) (relying on *Lamb* in construing sections 624.23 and 561.16). Therefore, a judgment lien generally cannot attach to land used and occupied as a homestead and land designated as a homestead generally cannot be executed upon to enforce a judgment lien.

However, there are exceptions to the general homestead exemption. *See* Iowa Code § 561.16 (1995) ("The homestead of every person is exempt from judicial sale *where there is no special declaration of statute to the contrary.*") (emphasis added). Section 561.21 sets forth several types of debts for which homestead property is liable. The section provides:

The homestead may be sold to satisfy debts of each of the following classes:

1. Those contracted prior to its acquisition, but then only to satisfy a deficiency remaining after exhausting the other property of the debtor, liable to execution.

2. Those created by written contract by persons having the power to convey, ex-

pressly stipulating that it shall be liable, but then only for deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt.

3. Those incurred for work done or material furnished exclusively for the improvement of the homestead.

4. If there is no survivor or issue, for the payment of any debts to which it might at that time be subjected if it had never been held as a homestead.

We have previously held that a child support judgment entered prior to the acquisition of the homestead is a debt within the meaning of section 561.21(1), which enables a court to subject the homestead to judicial sale to satisfy delinquent installments, absent other available property upon which to levy. *In re Marriage of McMorrow*, 342 N.W.2d 73, 76 (Iowa 1983); *see also In re Marriage of Armetta*, 417 N.W.2d 223, 224 (Iowa App. 1987) (extending holding in *McMorrow* by finding that obligation to support child is created at child's birth and acquisition of homestead after that time renders the property liable for payment of past due child support). In both *McMorrow* and *Armetta*, however, the homestead property at issue was owned solely by the delinquent spouse, not jointly by the delinquent spouse and a current spouse, as in the case at bar. This factual twist presents a scenario that we have never explicitly addressed. We must consider the effect of the current wife's homestead rights on a judgment for child support against her husband, with whom she jointly owns the homestead.

The court of appeals considered a similar issue in *Adamson v. Rice*, 478 N.W.2d 414 (Iowa App.1991). In *Adamson*, the district court found that an ex-husband was delinquent in his child support obligation to his ex-wife. In an attempt to satisfy the judgment for outstanding child support, the ex-wife directed the sheriff to sell through general execution all of the ex-husband's right in a lot owned jointly by him and his current wife. The sheriff's sale was held and the ex-wife purchased the property. The ex-husband and current wife then filed for a temporary and permanent injunction to stop the sale and levy. The district court found that the current wife's interest in the property was subordinate to the ex-wife's right to child support and that the sale was proper. The current wife appealed. *Adamson*, 478 N.W.2d at 415.

The court of appeals noted in its decision that "[t]he public policy underlying child support recovery laws rises higher than our policy to guard homestead rights." *Id.* (citing *McMorrow*, 342 N.W.2d at 76; *Armetta*, 417 N.W.2d at 224). However, the court, applying "fundamental legal principles," concluded that because the current wife was not made a party to the execution judgment and received no notice of the sale of the homestead which she jointly owned, the execution was not valid against her. *Id.* The court of appeals found that the district court erred in denying the injunction because no adjudication of the current wife's rights in the property had occurred and the ex-husband's homestead rights, which were subject to execution pursuant to *McMorrow*, could not be split from the rights of the current wife. *Id.* at 416. Essentially, the fact that the current wife's homestead interest was not subject to execution prevented execution on the ex-husband's homestead interest. *Id.*

### C. Analysis

■ In the case at bar, Sandra contends the holding in *Adamson* is not applicable because she did not attempt to execute against property owned by Rose Baratta, the current wife, as did the ex-wife in *Adamson*. Sandra notes that at the time she filed her petition for foreclosure, the property was owned by PCHS and the homestead rights of Frank and Rose Baratta were no longer an issue. Because the attempted execution is against a subsequent owner, Sandra is correct in her contention that the holding in *Adamson* does not address the precise issue presented in this case.

PCHS counters that Sandra's judgment lien never *attached* to the homestead property and, therefore, there is no valid lien which can be enforced against the property even though it is now owned by PCHS, which cannot claim a homestead exemption. Thus, the issue we must determine is whether a

judgment lien for outstanding child support can *attach* to property owned and occupied as a homestead by an ex-husband and his current wife as joint tenants, when the judgment is against only the ex-husband. The holding in *Adamson* does not control our decision because Sandra did not attempt to execute against the property when it was owned by Frank and Rose. The *Adamson* court never considered the issue of attachment in reaching its decision.

■ Sandra concludes that because her attempt to execute the judgment took place when the property was no longer owned by Frank and Rose Baratta, the homestead protections provided by our law no longer apply. If examined in a vacuum, Sandra's argument does have some appeal. However, we must also be concerned with attachment of the judgment lien. A judgment lien must properly attach to property before that property can be used to satisfy the judgment. *See* Iowa Code §§ 624.23, .24 (1995). For the child support judgment lien in the instant case to be enforceable against PCHS it must have attached when the property was owned by Frank Baratta, who is the judgment debtor. *See id.* § 624.23. This is the point at which Sandra's argument disintegrates.

The child support judgment Sandra is trying to enforce names only Frank Baratta as the defendant liable for paying support. Sandra has no judgment against Rose Baratta and admits as much in her brief. Moreover, it is clear that at the time Sandra registered the Nebraska decree in Polk County, the property at issue was owned jointly by Frank and Rose Baratta. We cannot ignore Rose's homestead interest in determining whether the judgment lien attached to the property.

■ In several prior cases we have noted that judgment liens generally cannot attach to property used and occupied as a homestead. *See Cox v. Waudby*, 433 N.W.2d 716, 718 (Iowa 1988); *Brown*, 343 N.W.2d at 449–50; *Lamb*, 14 Iowa at 570. Based on these cases it is clear that the homestead exemption does not only prevent *execution* against homestead property, as Sandra argues, but the *attachment* of judgment liens to homestead property. There are exceptions to the

general rule of exemption, as delineated in section 561.21, and one of the exceptions applies to Frank. However, the prior existing debt exception found in section 561.21(1) does not apply to Rose's interest in the homestead property. She is not a judgment debtor for the outstanding child support. Thus, we are left to determine whether Frank's liability for the child support debt renders the entire property subject to attachment and, ultimately, execution.

■ We find our holding in *Merchants Mutual Bonding Co. v. Underberg*, 291 N.W.2d 19 (Iowa 1980), helpful in resolving the issue before us. In that case we noted that "[t]here can be no splitting of homestead rights." *Merchants Mutual*, 291 N.W.2d at 21. We concluded that "[a] creditor who seeks to satisfy his debt out of a homestead must be certain he has a right against the *whole* property, not just part of it." *Id.*; *see also Decorah State Bank v. Zidlicky*, 426 N.W.2d 388, 391 (Iowa 1988) ("If the interests of one [spouse] are not subject to execution, neither are the interests of the other."). Although in *Merchants Mutual* we were discussing actual execution of a judgment lien, the logic behind our pronouncement is equally applicable here. PCHS does not dispute that the lien would have attached to the property had it been owned solely by Frank. That conclusion is supported by our holding in *McMorrow*, 342 N.W.2d at 76.

The judicial proceeding which established the child support obligation named only Frank as the obligor. Rose was not liable for this debt. Therefore, Rose's ownership interest in the property prevented the judgment lien from attaching. *See Francksen v. Miller*, 297 N.W.2d 375, 377 (Iowa 1980) (noting that "one spouse cannot be divested of homestead rights by judicial proceedings in which only the other spouse is a party"); *In re Streeper*, 158 B.R. 783, 788–89 (Bankr. N.D.Iowa 1993) (applying Iowa law) (same); *In re Tyree*, 116 B.R. 682, 684 (Bankr. S.D.Iowa 1990) (applying Iowa law) (same); *In re Carstens*, 8 B.R. 524, 526 (Bankr. N.D.Iowa 1981) (applying Iowa law) (same). There was no judgment lien attached to the property at the time PCHS purchased the

property and consequently there is no lien upon which to foreclose.

 Moreover, our court has previously held that property owned as a homestead passes free and clear of any debts of the grantor. *See Brown,* 343 N.W.2d at 451 (citing *Delashmut v. Trau,* 44 Iowa 613, 616 (1876) (voluntary conveyance of homestead by its owner vests the title absolutely in the grantee); *Beyer v. Thoeming,* 81 Iowa 517, 519, 46 N.W. 1074, 1075 (1890) (same); *Mitchell v. West,* 93 N.W. 380, 381 (Iowa 1903) (same)); *accord* 2 Rufford G. Patton & Carroll G. Patton, *Patton on Land Titles* § 573, at 494 (2d ed.1957).

In *Lamb,* we explained this proposition as follows:

> The right of exemption continues until the sale and delivery of the deed to the vendee, and the lien cannot attach until after sale and delivery, nor until after it ceases to be occupied by the owner. Prior to this the vendee's rights become absolute.

*Lamb,* 14 Iowa at 570. Therefore, any argument by Sandra that the lien attached at the time of sale is improper. Sandra's argument is also untenable on the ground that PCHS is not the judgment debtor, so no basis for attachment exists.

The district court based its conclusion that the judgment lien did attach to the property owned by Frank and Rose Baratta in part on Iowa Code section 624.23, particularly subsection two, added to the statute by the legislature in 1982. The subsection currently provides:

> Judgment liens described in subsection 1 do not remain a lien upon real estate of the defendant, platted as a homestead pursuant to section 561.4, unless execution is levied within thirty days of the time the defendant or the defendant's agent has served written demand on the owner of the judgment. The demand shall state that the lien and all benefits derived from the lien as to the real estate platted as a homestead shall be forfeited unless the owner of the judgment levies execution

against that real estate within thirty days from the date of service of the demand. Iowa Code § 624.23(2) (1995).

Sandra argues, and the district court concluded, that the language of this subsection establishes that judgment liens do attach to homestead property. This conclusion is drawn from the following language of the statute: "[j]udgment liens ... do not *remain* a lien upon real estate of the defendant." (Emphasis added.) The word "remain," according to Sandra and the district court, indicates that judgment liens can attach to homestead property.

We disagree with this interpretation of section 624.23(2). The district court cites no authority for its conclusion that subsection two "establishes that judgment liens attach to homestead property." Sandra cites to a legislative explanation attached to the bill in its final version as support for this conclusion. *See* S.F. 511, 69th G.A. (1982). The explanation states in pertinent part:

> Under the amendment, judgment creditors with liens *enforceable* against homestead real estate under section 561.21 are required to levy execution against the homestead real estate to establish their rights, if the owner of the homestead serves notice on the judgment creditor. This procedure protects the homestead real estate from judgment liens which are not subject to creditors' claims under chapter 561.

(Emphasis added.)

 First, the emphasized language above indicates that subsection two applies only to judgment creditors "with liens enforceable against homestead real estate under section 561.21." This interpretation is in accord with the holdings of our prior cases that section 624.23 is limited by the homestead exemption found in section 561.16, and the only exceptions are those found in section 561.21. *See Brown,* 343 N.W.2d at 449–50 (citing *Lamb,* 14 Iowa at 569–70). Therefore, only those judgment liens that are enforceable against homestead property attach to such property, and only those liens "remain" on the property. We have already concluded that the judgment lien at issue is not enforceable against this property because of Rose's homestead interest. Second, the explanation

cited by Sandra says nothing about attachment and does not support her conclusion that by the amendment the legislature intended to change over one hundred years of Iowa case law holding that, in general, judgment liens do not attach to homestead property. *See Lamb,* 14 Iowa at 569–70.

We find that the purpose of the enactment of subsection two was not to change prior law on the effect of judgment liens upon homestead rights, but to provide a simplified procedure for homestead owners to clear the title of their homesteads from any recorded judgments against them which may cloud title to the property, as two sources cited by PCHS reinforce. *See* Committee on Title Standards, Iowa State Bar Assn, *Iowa Land Title Standards* ch. 6.7, cmt., at 8 (7th ed.1993) [hereinafter *Title Standards*] (noting that prior to the amendment, "judgment debtors were unable to convey marketable title to otherwise exempt homestead real estate without a declaratory judgment or quiet title action to establish that a judgment of record was not a lien"); George F. Madsen, *Marshall's Iowa Title Opinions and Standards* § 11.1(F), at 38 (2d ed. Supp.1982) (noting that section 624.23 was "amended to provide that a judgment debtor may sell his homestead without satisfaction of judgments which are not in fact liens against homestead property").

The comment to chapter 6.7 in *Iowa Land Title Standards* states:

It should be noted that the 1982 amendments to Iowa Code § 624.23 do not change existing case law as to what judgments may in fact be liens under Iowa Code § 561.21. Unless a judgment arises out of a claim as described in Iowa Code § 561.21, the judgment is not a lien on the homestead. Presumably judgment creditors whose interest is not described in Iowa Code § 561.21 will not levy execution when notice is served under Iowa Code § 624.23 because a wrongful levy would arguably subject the creditor to a claim by the judgment debtor.

*Title Standards* ch. 6.7, cmt., at 9.

We agree with the conclusion stated in this comment and find that the district court's reliance on section 624.23(2) in its holding

that Sandra's judgment lien did attach to the homestead property was improper.

We sympathize with Sandra's plight in trying to enforce an egregiously overdue child support judgment. Frank's conduct in refusing to pay this support since the decree was entered in 1970, on its face, is meritless and reprehensible. However, we must follow Iowa law with regard to the enforceability of judgment liens against homestead property and cannot ignore Rose's homestead interest which has had the imprimatur of legislative and executive approval for many years. If the legislature, in its policy-making role, believes that obligations for child support should take precedence over a non-obligor's homestead interest in property owned jointly with the obligor parent, it can amend the statute accordingly. Absent such legislative guidance, however, we are bound to apply the laws as written.

We find it unnecessary to address the propriety of Sandra's motion for summary judgment, as our resolution of the quiet title action leads to the conclusion that Sandra has no enforceable judgment lien against the property owned by PCHS and described in its petition to quiet title. The district court erred in denying PCHS's motion for summary judgment and in granting Sandra's motion. Therefore, we reverse and remand for entry of judgment in favor of PCHS. PCHS's title to the property at issue is quieted against all claims raised by Sandra Baratta. We also award $25 in attorney fees to PCHS pursuant to Iowa Code section 649.5. Costs are assessed to appellee.

**REVERSED AND REMANDED.**

All justices concur except CARTER, J., who concurs in part and dissents in part, and is joined by LARSON, NEUMAN, and CADY, JJ.

CARTER, Justice (concurring in part, dissenting in part).

I concur in the conclusion reached in the opinion of the court that the district court erred in granting summary judgment for the plaintiff, Sandra Baratta. The court's opinion is wrong, however, in holding that San-

dra's claim must fail as a matter of law and that the appellant should prevail as a matter of law. There are issues of fact that, if resolved in Sandra's favor, should allow her to foreclose her judgment lien on the undivided one-half interest in the subject property that had been owned by Frank Baratta.

As the majority correctly notes, if the owner of land is entitled to invoke a homestead exemption to prevent sale of the property to satisfy a judgment, our cases have declared that no judgment lien attaches to the property. *Cox v. Waudby*, 433 N.W.2d 716, 718 (Iowa 1988); *Brown v. Vonnahme*, 343 N.W.2d 445, 449–50 (Iowa 1984). Consistent with this principle, if the property owner conveys the homestead, the grantee takes free of any judgment lien. *Brown*, 343 N.W.2d at 451. This is not so, however, if the judgment arises out of a claim described in Iowa Code section 561.21 (1995). A judgment for those types of claims *is* a lien on homestead property. This is recognized in chapter 6.7 of the Iowa Land Title Standards quoted in the majority opinion.

Child support judgments antedating the acquisition of the homestead are the type of claim for which section 561.21 withholds the protection of the homestead exemption. *In re Marriage of McMorrow*, 342 N.W.2d 73, 76 (Iowa 1983). If Frank Baratta had been the sole owner of the property occupied as his homestead, the homestead could be sold to satisfy Sandra's judgment. Moreover, if Frank, as sole owner, conveyed the homestead, the grantee would take the property subject to the lien of Sandra's judgment.

Our cases have declared that, if property is owned and occupied as a homestead by both the judgment debtor and another person not subject to the judgment, the latter may invoke the homestead exemption to prevent sale of the property to satisfy the judgment against the other co-owner. *E.g., Merchants Mut. Bonding Co. v. Underberg*, 291 N.W.2d 19, 21 (Iowa 1980). The majority mistakenly concludes that this occupancy right of the co-owner that is not subject to the judgment

somehow prevents the judgment lien from attaching to the interest of the other co-owner that is subject to the judgment during the time that the innocent owner continues to reside in the homestead. There is no language in the applicable statutes that suggests that this is so. Furthermore, this conclusion should be rejected because it allows a judgment debtor to shelter that person's homestead from preexisting debts contrary to the legislative policy underlying section 561.21.

Giving the judgment debtor the type of protection accorded in the opinion of the court is not necessary in order to provide the co-owner, not subject to the judgment, with all of the protection that person is entitled to receive. The interest of the co-owner in such instances is adequately protected by assuring (1) that person's privilege to occupy the homestead for as long as he or she chooses to do so, and (2) that, upon sale of the homestead, that person's undivided interest passes to the grantee free of any judgment lien. Co-ownership of the homestead should not preclude someone in Sandra's position from acquiring a judgment lien on the interest of the co-owner subject to the judgment and enforcing that lien after the property ceases to be the homestead of the co-owner not subject to the judgment.[1]

Notwithstanding the foregoing conclusions, the district court should not have granted summary judgment for Sandra. In resisting summary judgment, the appellant property owner asserted a subrogation interest as a result of satisfying liens on the property that would be prior to Sandra's judgment lien. In such instances, equity, speaking from the standpoint of good conscience, substitutes the person so paying the prior lien to the place of the original creditor so as to enable that person to enforce the security for purposes of reimbursement. 73 Am.Jur.2d *Subrogation* § 90, at 654 (1974). Factual issues exist concerning this subrogation defense. These

---

1. The purchaser of the property would be entitled to decline merger of the interests of the individual joint grantors (Frank Baratta and his present spouse) and restrict enforcement of the lien to only an undivided one-half interest in the

property. *Freier v. Longnecker*, 227 Iowa 366, 371, 288 N.W. 444, 446 (1939). Based on this premise, the district court exceeded its authority in allowing foreclosure of the lien against the entire property.

issues preclude the granting of summary judgment at this time.[2]

I would reverse the judgment of the district court granting summary judgment for Sandra and remand the case to that court for further proceedings to resolve the factual issues that might stand as a bar to or reduction of her recovery.

LARSON, NEUMAN, and CADY, JJ., join this concurrence in part and dissent in part.

---

**2.** The appellant property owner also asserts, for the first time on appeal, that Sandra's lien would be barred by the ten-year period of limitation contained in section 624.23(1). This is an action in equity to foreclose the lien based upon specifically averred facts. In such a proceeding, the statute of limitations would be an affirmative defense. No such defense has been raised in the property owner's answer, counterclaim, or resistance to Sandra's motion for summary judgment.